# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| MARINO SCAFIDI,<br><br>        Plaintiff,<br><br>    vs.<br><br>LAS VEGAS METROPOLITAN POLICE<br>DEPARTMENT et al.,<br><br>        Defendants. | 2:14-cv-01933-RCJ-GWF<br><br>**ORDER** |

This case arises out of an arrest, allegedly without probable cause, and a subsequent prosecution. Pending before the Court is a motion for summary judgment.

## I.    FACTS AND PROCEDURAL HISTORY

Plaintiff Marino Scafidi has sued several members of the Las Vegas Metropolitan Police Department ("Metro"), Metro itself, a nurse, and ten unidentified security guards employed by the Palms Hotel and Casino ("the Palms") based on events that occurred at the Palms on September 1, 2012. (*See* Am. Compl. ¶¶ 1–16, ECF No. 31, at 9). On that date, Plaintiff and Stephanie Carter went on a date at the Palms, eating dinner at a restaurant on the property at approximately 9:30 p.m., and thereafter socializing in Plaintiff's room. (*Id.* ¶¶16–18). Carter drank alcohol during dinner and in Plaintiff's room. (*Id.*). At approximately 1:30 a.m. on September 2, 2017, Plaintiff and Carter went to a nightclub at the Palms to dance. (*Id.* ¶ 19).

They returned to Plaintiff's room at approximately 3 a.m. and had sex, agreeing to videotape portions of their sexual activity. (*Id.* ¶¶ 20–23).

Carter later had a "psychotic episode" that Plaintiff believes was caused by an adverse reaction between alcohol and the psychoactive antidepressant Wellbutrin. (*Id.* ¶ 26). Specifically, Carter walked into the bathroom, called 911, and stated repeatedly, "He's going to kill me!" (*Id.* ¶ 27). She also threatened to kill herself during the call and falsely claimed that Plaintiff had a gun. (*Id.*). Plaintiff can be heard during the call repeatedly asking Carter if she was okay, telling her he needed to use the bathroom, and asking her to open the door. (*Id.*). Defendants arrived at the room and told Plaintiff that Carter had called 911 and had claimed that he was armed. (*Id.* ¶ 29). Defendants confined Plaintiff in a security room and attempted to question him, (*id.* ¶ 30), made Plaintiff disrobe and inserted a cotton swab into his urethra, (*id.* ¶ 31), and finally arrested Plaintiff and took him to the Clark County Detention Center ("CCDC"), where he was held for four days, (*id.* ¶¶ 32, 34).

Carter was examined by Defendant Jeri Dermanelian, a nurse, early on September 2, 2012. (*Id.* ¶¶ 10, 35). During the examination, Carter exhibited symptoms of psychotic behavior, and there was no evidence of violence, but only of sexual activity. (*Id.* ¶¶ 35–36). A blood test showed a blood alcohol content of 0.173 but no sign of illegal drugs. (*Id.* ¶ 39). Carter had been taking her Wellbutrin, and the manufacturer of that drug indicates it should not be taken with alcohol. (*Id.* ¶¶ 39–40). At 6:30 a.m., Carter told police that she did not know why she falsely claimed Plaintiff was going to kill her, and she stated she had only told Plaintiff "no" in a joking manner when they were "joking around" with each other. (*Id.* ¶ 37). Despite Defendants' repeated attempts to elicit accusations of sexual battery, Carter refused to make such accusations. (*Id.* ¶ 38). Plaintiff also gave a blood sample, but Defendants destroyed it before testing it for

alcohol or drugs, and they also destroyed Carter's alcohol and urine samples. (*Id.* ¶¶ 41–42). Defendants did not search Carter's purse (which contained pills and "pow[d]er") or her cell phone (which contained text messages sent to Carter's friends before she had sex with Plaintiff). (*Id.* ¶¶ 43–44). Defendant Detective R. Beza put four pills of Ambien into a mint container and placed the container near Plaintiff's jeans to make it look like it had been in his pocket; still, Defendants did not test Carter's blood for Ambien. (*Id.* ¶¶ 7, 45). Defendants searched Plaintiff's room at the Palms and removed personal property from the safe and elsewhere in the room; some of Plaintiff's jewelry and cash are still missing. (*Id.* ¶ 46). Defendants conspired not to preserve exculpatory evidence. (*Id.* ¶ 47).

Plaintiff was charged with three counts of sexual assault under Nevada Revised Statutes sections 200.364 and 200.366. A preliminary hearing was held before a justice of the peace on January 17, 2013. (*See* Hr'g Tr., ECF No. 48-15). At the preliminary hearing, Carter testified that she felt very intoxicated when returning to Plaintiff's room and that she lied down on the bed and told him she didn't want any physical activity with him, but that he penetrated her vagina without her consent both with his finger and his penis. (*Id.* 13–20). On cross-examination, Carter admitted returning willingly to Plaintiff's room and kissing him but maintained that the sex was not consensual and that she told him to leave her alone, even pretending to be asleep so he would leave her alone. (*Id.* 44–48). The justice of the peace found there to be probable cause and bound Plaintiff over for trial in the state district court. (*Id.* 92).

After the state district court dismissed the charges based on spoliation of evidence (the fluid samples and text messages), Plaintiff sued Defendants in state court for federal civil rights violations and various state law torts. Defendants removed. One Defendant moved to dismiss, and another moved for summary judgment. While those motions were pending, the Court

3

granted a stipulation to stay the case pending the Nevada Supreme Court's resolution of the State's appeal of the dismissal of the underlying criminal case, denying all pending motions without prejudice. The Nevada Supreme Court reversed and remanded, ruling that only the text messages were potentially exculpatory, and that on remand the state district court should consider whether a curative jury instruction would be a sufficient sanction. The state district court ruled that a curative jury instruction would suffice, and it rescheduled the trial for October 30, 2017. The state district court recently granted the State's motion to dismiss all charges after excluding certain evidence for Fourth Amendment violations. It is not clear whether the State has appealed (or intends to appeal) the suppression order.

The Amended Complaint ("AC") list claims for: (1) unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983; (2) liability of Metro for the violations alleged under the first claim under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978); (3) conspiracy under § 1983; (4) negligence; (5) false imprisonment; (6) malicious prosecution; and (7) intentional infliction of emotional distress ("IIED"). Metro Defendants have moved for summary judgment.

## II. SUMMARY JUDGMENT STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent

evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even if the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III.   ANALYSIS

#### A.   Issue Preclusion

Defendants argue all of Plaintiff's claims fail unless he can show a lack of probable cause to arrest him, and the issue of probable cause is precluded from re-litigation because the state justice court found probable cause at the preliminary hearing, a finding that has never been disturbed. Plaintiff argues that collateral estoppel does not apply, because Defendants were not parties to the state court criminal action. Plaintiff conflates the doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel). Defendants argue issue preclusion, not claim preclusion, and Nevada law is clear that for issue preclusion to apply it only matters that Plaintiff was a party to the previous action and lost on the issue he seeks to re-litigate now. *See Five Star Capital Corp. v. Ruby*, 194 P.3d 709, 713–14 (Nev. 2008); *Paradise Palms Cmty. Ass'n v.*

*Paradise Homes*, 505 P.2d 596, 599 (Nev. 1973). The Court of Appeals recently cited these cases in recognizing that Nevada law requires mutuality for claim preclusion but not for issue preclusion. *See Dockins v. Am. Fam. Fin. Servs., Inc.*, 606 Fed. Appx. 877, 879 (9th Cir. 2015). The question remains whether any of Plaintiff's claims are viable even assuming Defendants had probable cause to arrest him. Plaintiff does not appear to allege excessive force, but only arrest without probable cause. That claim is impossible if the issue of probable cause is precluded from re-litigation. *See Beck v. City of Upland*, 527 F.3d 853, 864 (9th Cir. 2008) ("Proving lack of probable cause is usually essential to demonstrating that the plaintiff's Fourth Amendment rights were violated."); *Mark v. Furay*, 769 F.2d 1266, 1269 (7th Cir. 1985) ("[T]he existence of probable cause for an arrest totally precludes any section 1983 claim for unlawful arrest, false imprisonment, or malicious prosecution . . . ."). The *Monell* and conspiracy claims based on a violation of Plaintiff's Fourth Amendment rights therefore would also fail.

The state law claims also fail if probable cause cannot be re-litigated. As a general matter, "an arrest made with probable cause is privileged and not actionable." *Nelson v. City of Las Vegas*, 665 P.2d 1141, 1144 (Nev. 1983). Nevada's appellate courts have separately addressed each of the state law intentional torts claimed here and determined that they fail where the challenged conduct was supported by probable cause. *See Hernandez v. City of Reno*, 634 P.2d 668, 671 (Nev. 1981) (affirming dismissal of a false imprisonment claim because the plaintiff had been arrested on probable cause); *Bonamy v. Zenoff*, 362 P.2d 445, 446–47 (Nev. 1961) (affirming a directed verdict against a malicious prosecution claim because "want of probable cause" is an element of such a claim independent of malice and no evidence tending to show a lack of probable cause had been presented at trial); *Palmieri v. Clark Cnty.*, 367 P.3d 442, 446 & n.2 (Nev. Ct. App. 2015) (affirming summary judgment against an IIED claim based

on a residential search because there was probable cause to conduct it). And the Court rejects the theory that Defendants negligently failed to comply with the Constitution such that there is a state law negligence claim separate from the § 1983 claims. The duties of Defendants with respect to Plaintiff's constitutional rights are defined by federal constitutional law, not state common law. If the issue of probable cause is precluded from re-litigation, Defendants cannot be found to have violated Plaintiff's rights against unreasonable search or seizure (or any state law right) based on his arrest.

Finally, Plaintiff argues that a finding of probable cause at a preliminary hearing is only prima facie evidence of probable cause that is rebuttable in a later § 1983 action. The case he cites for that proposition relied on California law. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066–67 (9th Cir. 2004). The Court of Appeals has ruled that in Nevada, probable cause determinations at preliminary hearings are "final, conclusive determination[s] of the issue," even where a defendant is later acquitted. *Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994). The Court finds that the present claims therefore fail.

### B. The Claim Period Under NRS 41.036

Defendants next argue that Plaintiff failed to comply with Nevada Revised Statutes section ("NRS") 41.036. *See* Nev. Rev. Stat. § 41.036(2) ("Each person who has a claim against any political subdivision of the State arising out of a tort must file the claim within 2 years after the time the cause of action accrues with the governing body of that political subdivision "). They incorporate the arguments made in Motion to Dismiss No. 8, which the Court denied without prejudice upon issuing the stay earlier in the case. The allegedly wrongful arrest was made on September 2, 2012, and the Complaint was filed in state court on August 29, 2014. It is clear the two-year statute of limitations for personal injury claims in Nevada (and therefore

§ 1983 claims) did not run. But Defendants argue the requirement to file an administrative claim "with the governing body of [Metro]" is an additional limitation. *See id.*

The Nevada Supreme Court has ruled that certain "claim statutes" are unconstitutional as applied to tort claims, because where the state has waived its immunity, a claim statute arbitrarily discriminates between victims of private and public tortfeasors. *See Turner v. Staggs*, 510 P.2d 879, 881–83 (Nev.) (en banc) (striking down NRS 244.245 and 244.250 as applied to tort claims), *cert. denied* 414 U.S. 1079 (1973); *see also L-M Architects, Inc. v. City of Sparks*, 683 P.2d 11, 12 (Nev. 1984) (reiterating the *Turner* rule but holding that claim statutes are constitutionally valid as applied to contract claims). The Nevada Supreme Court once applied the *Turner* rule to NRS 41.036(2). *See Hopper v. Clark Cnty. Sch. Dist.*, 514 P.2d 1294, 1294 (Nev. 1973). But the Court agrees with precedent from within this District indicating that the *Turner* rule no longer applies to NRS 41.036(2) due to intervening amendments to NRS 41.036(2). *See Hartrim v. Las Vegas Metro. Police Dep't*, No. 2:11-cv-3, 2011 WL 2690148, at *3 (D. Nev. July 11, 2011) (Hunt, J.); *Zaic v. Las Vegas Metro. Police Dep't*, No. 2:10-cv-1814, 2011 WL 88435, at *4–5 (D. Nev. Mar. 11, 2011) (Pro, J.). The Court grants summary judgment against the state law claims for this reason, as well.

### C. Discretionary Immunity Under NRS 41.032

Metro Defendants argue they are immune from the state law claims under NRS 41.032. In Nevada, certain government actors have discretionary immunity from common law claims. *See* Nev. Rev. Stat. § 41.032. This section of the code immediately follows the section that waives the state's common law sovereign immunity but retains the state's Eleventh Amendment protection. *See id.* § 41.031. The discretionary immunity statute applies to actions brought "against an immune contractor or an officer or employee of the State or any of its agencies or

9

political subdivisions." *See id.* § 41.032. On its face, the statute does not necessarily immunize municipal governments or their employees, because in some contexts municipalities are considered independent corporations or "persons" with their own identities, not mere political subdivisions of the state, at least in the eyes of Congress. *See Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). The Nevada Supreme Court, however, has always assumed that municipalities are political subdivisions of the state for the purposes of the discretionary immunity statute. *See, e.g.*, *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987). This construction is consistent with *Monell*, because the discretionary immunity statute only protects state and municipal agencies against state causes of action.

The statute immunizes municipal agencies and their employees against actions:

> [b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Nev. Rev. Stat. § 41.032(2). In interpreting this statute, the Nevada Supreme Court has explicitly adopted the two-part test for discretionary immunity under the Federal Tort Claims Act, under which there is discretionary immunity when: (1) the allegedly negligent acts involve elements of judgment or choice; (2) and the judgment or choice made involves social, economic, or political policy considerations. *Martinez v. Maruszczak*, 168 P.3d 720, 722 (Nev. 2007) (citing *Berkovitz v. United States*, 486 U.S. 531 (1988); *United States v. Gaubert*, 499 U.S. 315 (1991)). Under this standard, a court does not ask whether the official abused his or her discretion, *see* Nev. Rev. Stat. § 41.032(2), but only whether the acts concerned a matter in which the official had discretion. In other words, the immunity is not infinitely broad, but once it is determined that the acts at issue were within the breadth of the statute, i.e., that they involved judgment or

10

choice on social, economic, or political policy considerations, the immunity then applies even to abuses of discretion.

In *Ransdell v. Clark County*, the Court ruled that where there is no particular policy or statute in place making the act at issue a purely ministerial one, but where the actor's personal decision is made in furtherance of stated goals and policies, discretionary-act immunity protects the actor. 192 P.3d 756, 763 (Nev. 2009). There, a county inspector obtained a warrant to have debris removed from Mr. Ransdell's property when he refused to remove it himself after several complaints, inspections, citations, and extensions of time. *See id.* at 759. The county removed the debris, and Mr. Ransdell brought § 1983 and state law tort claims against the county. *Id.* at 759–60. Applying *Martinez* and examining a factually similar case from Iowa (which, like Nevada, had adopted the *Berkovitz–Gaubert* test), the Court ruled that the second prong of the test was satisfied "because the goals of the County in abating Ransdell's property were motivated by environmental, health, and economic policies supported by Clark County Code and statutory authority." *Id.* at 763. *Ransdell* makes it clear that individual acts involving the implementation of covered types of policy choices are protected under the discretionary immunity statute. *Id.* at 764 ("[B]ecause the County's actions were grounded on public policy concerns, as expressed in the County Code and Nevada's abatement statute, they fit within the second criterion of the *Berkovitz–Gaubert* test.").

There is no discretionary immunity for acts taken in "bad faith," which is subjective malice that is worse than an objective abuse of discretion. *See Falline v. GNLV Corp.*, 823 P.2d 888 (1991); *see also Jones v. Metro*, --- F.3d ----, 2017 WL 4700317 (9th Cir. 2017). The *Falline* Court held that "bad faith" encompasses acts that are completely outside the authority of an official: "Bad faith . . . involves an implemented attitude that completely transcends the

11

circumference of authority granted the individual or entity. In other words, an abuse of discretion occurs within the circumference of authority, and an act or omission of bad faith occurs outside the circumference of authority." *Id.* at 892 n.3. In *Davis v. City of Las Vegas*, the Court of Appeals noted that under *Falline*, "where an officer arrests a citizen in an abusive manner not as the result of the exercise of poor judgment as to the force required to make an arrest [an objective abuse of discretion], but instead because of hostility toward a suspect or a particular class of suspects (such as members of racial minority groups) or because of a willful or deliberate disregard for the rights of a particular citizen or citizens [a subjective abuse of power], the officer's actions are the result of bad faith and he is not immune from suit." 478 F.3d 1048, 1060 (9th Cir. 2007). The difference between a non-actionable abuse of discretion and an actionable bad-faith violation of rights therefore appears to turn on the state actor's mental state; when he crosses the line from recklessness as to a person's rights to malicious intent to violate them, he is no longer protected by the discretionary immunity statute, even if he initially satisfies the two-part test under *Martinez*.

Here, there is no question that making the decision to arrest Plaintiff required an element of judgment or choice, and a police officer's decision to arrest a person for a crime is grounded in social, economic, or political policy considerations. *See Gonzalez v. Metro*, No. 61120, 2013 WL 7158415, at *3 (Nev. Nov. 21, 2013) (ruling that even the comparatively ministerial task of determining whether a person is the one named in an arrest warrant implicates discretionary immunity). Nor is there evidence that would permit a jury to find that Metro Defendants acted with malice in investigating and prosecuting Plaintiff, even if their evidence collection and preservation might be described as incomplete. Defendants were faced with a 911 call where the complaining witness had claimed Plaintiff had assaulted and threatened her. At the preliminary

hearing they still had, at a minimum, evidence of Plaintiff's sexual conduct with a person too inebriated to consent, as well as Plaintiff's testimony that she did not consent.

## CONCLUSION

IT IS HEREBY ORDERED that the Motion for Leave to File Supplement (ECF No. 54) is GRANTED.

IT IS FURTHER ORDERED that the Motion for Summary Judgment (ECF No. 48) is GRANTED.

IT IS SO ORDERED.

Dated this 8th day of May, 2017.

_____
ROBERT C. JONES
United States District Judge