**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MARINO SCAFIDI,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.<br><br>　　　　　Defendants. | Case No. 2:14-cv-01933-RCJ-GWF<br><br>**ORDER** |

Plaintiff was charged with three counts of sexual assault under Nevada law. At the preliminary hearing, the state district court determined that there was probable cause to prosecute Plaintiff, but the court later dismissed the charges based upon spoliation of evidence. The government appealed, and the Nevada Supreme Court reversed and remanded, holding that the district court needed to consider whether a curative jury instruction would suffice. The state district court held that such a jury instruction would. Nonetheless, the government later voluntarily dismissed the charges against Plaintiff.

Plaintiff brought suit against, as relevant here, the Las Vegas Metro Police Department ("LVMPD"), five officers, a crime scene investigator, and the nurse who performed a sexual assault exam on the alleged victim. He alleges that these parties conspired to frame him by

fabricating inculpatory evidence and destroying exculpatory evidence. He claims that their actions violated his constitutional rights guaranteed by the Fourth and Fourteenth Amendments. He therefore brings claims pursuant to 42 U.S.C. § 1983 and various state law grounds.

The Court previously granted summary judgment for all Defendants on the basis of issue preclusion. The Nevada state court determined that there was probable cause to prosecute Plaintiff at the preliminary hearing; a finding that would be fatal to Plaintiff's claims. The Ninth Circuit reversed and remanded because Nevada law now "rejects the view that a probable cause determination at a preliminary hearing precludes later relitigation of that question." (ECF No. 69 at 6.)

Presently, the nurse, Defendant Jeri Dermanelian, moves for summary judgment based upon the evidence adduced through the criminal case but without the benefit of discovery from this case. Plaintiff alleges the following claims against her: a conspiracy under 42 U.S.C. § 1983, malicious prosecution, and intentional infliction of emotional distress. Plaintiff counters that the current record is sufficient to survive summary judgment and alternatively moves for further discovery to survive the motion. The Court finds that the evidence adduced through the criminal prosecution shows that Defendant Dermanelian failed to commit these torts and that Plaintiff has failed to identify specific facts that would alter this determination. The Court therefore grants summary judgment in favor of Defendant Dermanelian.

**FACTUAL BACKGROUND**

Plaintiff alleges the following pertinent facts in his amended complaint (ECF No. 31 Ex. 3): Plaintiff met with the alleged victim, Ms. Stephanie Carter in Clark County, Nevada on September 1, 2012 after communicating with her for several months online and through text messages. Over the course of that night and into the early morning hours of September 2, 2012, Plaintiff and Ms. Carter ate dinner, drank alcohol, and went to a nightclub. At approximately 3:00 a.m., Plaintiff and

Ms. Carter went to Plaintiff's hotel room, where they engaged in consensual intercourse, which they recorded on their cell phones. Over the course of these events, Ms. Carter had sent multiple text messages about Plaintiff to her friends, including while she was in Plaintiff's room. Subsequent to the sexual relations, Ms. Carter walked to the bathroom, locked herself in, and called 911 falsely claiming that Plaintiff was attempting to kill her. Plaintiff was arrested by LVMPD and charged with sexual assault. Defendant Dermanelian is a sexual assault nurse examiner ("SANE") and performed a sexual assault examination on Ms. Carter. This "examination demonstrated that there were no signs consistent with physical violence, rather there were only indications of sexual activity. Despite that fact [Defendant] Dermanelian set-in-motion a malicious prosecution of [Plaintiff]. [Defendant] Dermanelian also conspired with all other Defendants to violate [Plaintiff]'s civil rights."

Defendant Dermanelian admits to performing the examination of Ms. Carter and doing so on behalf of University Medical Center ("UMC")—a political subdivision of the State of Nevada—as a private contractor. (*See* ECF No. 72 Ex. A ¶¶ 6–7.) According to a medical record that bears the electronic signatures of Defendant Dermanelian and Physician Dale Carrison, DO, Ms. Carter chose to undergo the sexual assault examination after claiming that she was sexually assaulted. (ECF No. 79 Ex. 4 at 6, 8.)[1] Defendant Dermanelian and Dr. Carrison documented findings that were consistent with recent sexual activity including the following: labial soreness; external genital soreness; pain to the region of the posterior fourchette; cold and burning sensation with the application of toluidine blue dye; erythemic hymenal edging; red tinge to swabs taken from vaginal walls and cervical os; and redness at the perineal region bordering the posterior

---

[1] This exhibit contains a declaration, parts of two medical records, and parts of two police reports. To avoid confusion, the page numbers in citations to this exhibit refer to the page of the entire exhibit including the cover page.

fourchette. (*Id.* at 8–9.)[2] In a medical chart that only bears Defendant Dermanelian's signature, "Sexual Assault" is written in the blanks next to "Diagnosis" and "CLINICAL IMPRESSION." (*Id.* at 3, 5.) Besides these notes, these documents do not indicate whether these findings evince whether sexual activity was consensual. Defendant Dermanelian swears by affidavit that she did not "opine whether a sexual assault or crime ha[d] occurred" to the police. (ECF No. 72 Ex. A ¶ 10.)

The LVMPD arrest report states, "[Ms.] Carter received a SANE exam which showed positive findings consistent with a sexual assault." (ECF No. 79 Ex. 4 at 10.)[3] The LVMPD search warrant affidavit states, "Results of the [SANE] exam showed positive findings of a sexual assault which can be obtained through the SANE Nurse." (*Id.* at 11.)

Defendant Keith Pool testified that Defendant Dermanelian merely indicated that the findings of the SANE examination adduced "positive findings" of "some sort of sexual contact" without indicating if "it was sexual assault or just sex" during his testimony in the state court proceedings. (ECF No. 85 Ex. A at 40.) Defendant Pool further noted that he typically does not review the medical reports generated from a SANE examination but merely consults with the nurse examiner, and in this case, he had not seen the reports when LVMPD brought the case to the DA's

---

[2] Despite these noted findings indicating recent sexual activity, Plaintiff oddly claims, "It is undisputed that the SANE record signed by both Dr. Carrison and [Defendant] Dermanelian rendered no medical conclusions or impressions related to [Ms.] Carter sustaining objective findings consistent with sexual activity or sexual assault." (ECF No. 79 at 8.) Plaintiff may have made this assertion based upon the impression, which merely reads, "Sexual assault exam, sexually transmitted infection evaluation." (*Id.*) This impression, however, does not state that the nurse examiner failed to find evidence of recent sexual activity. Indeed, he appears to concede that these findings are indicative of recent sexual activity as he argues elsewhere that these findings were made in error. (*See, e.g.*, ECF No. Ex. 3 at 6–7 (arguing that the only redness that could be seen on Ms. Carter's vaginal wall and cervix was caused by the improper administration of the examination).)

[3] It is not clear from the exhibit itself that this page is from the arrest report, but Plaintiff indicates that this page is in one of his affidavits. (ECF No. 72 Ex. 5 at 2.) Similarly, it is unclear from the exhibit, but Plaintiff asserts that the following page is from the search warrant affidavit. (*Id.*)

office. (ECF No. 85 Ex. B. at 84–85.) Defendant Pool relayed all of the evidence that he had collected about the alleged sexual assault, including Defendant Dermanelian's statement of "positive findings," to Defendant Detective Beza, who applied for and obtained the search warrant against Plaintiff. (ECF No. 85 Ex. A at 115–17.) Defendant Beza testified that he made the search warrant application without talking to Defendant Dermanelian and based his affirmations regarding the examination upon Defendant Pool's statements. (*Id.*) Defendant Pool's statements regarding the examination may have been misleading as he relayed to Defendant Beza that there were "positive findings" from the examination and "left out the aspect that it was positive findings for sex and not sexual assault." (*Id.* at 40.) He claims that he failed to include that detail since the examination is only used to determine whether recent sexual activity occurred and not whether such sexual activity was the result of an assault. (*Id.*)

Plaintiff has attached two self-authored affidavits to his response. (ECF No. 79 Exs. 3, 5.) The first affidavit is dated October 19, 2017, and in it, he states, in pertinent part:

> At the [SANE] examination, [a] nurse wrote that Ms. Carter "sat in chair and rocked back and forth and kept muttering 'he was going to kill me.'" Regarding the SANE examination, the Nevada District Court previously found that Detective Beza falsely stated in his warrant affidavit that the findings of the SANE exam performed on [Ms. Carter] positive for sexual assault. Without further qualification, however, this statement was provably false and misleading. The court found that the actual findings of the exam were positive only for sexual intercourse; the findings did not indicate that the sex was not consensual. This was a false and misleading statement which should have been removed from the affidavit or, at a minumum [sic], clarified for the magistrate's determination of probable cause. Additionally, I have newly discovered upon review of the SANE exam and SANE pictures that there was not even evidence of sexual activity. There was a positive uptake of toluidine dye for the mere presence of mucous tissue because the SANE nurse wrongfully misapplied the dye only to the mucosal tissue, which revealed a purple uptake color; there was no positive uptake of dye regarding abraded tissue, which would have been a deep blue uptake color if positive when properly added to the dead skin cell layer. Furthermore, there was no abnormal redness to the vaginal wall and cervix. The only redness that can be visualized was caused as a result of examination error by the SANE nurse applying pressure to the delicate tissue during her examination, which created medical artifact, and the nurse should have not misrepresented this in the medical record. The nurse also omitted the fact that a white substance could

    be seen on the walls of her vagina, indicating that [Ms. Carter] actually suffered from a yeast infection.

(ECF No. 79 Ex. 3 at 6–7.) The second affidavit is dated October 9, 2020. (ECF No. 79 Ex. 5.) In this affidavit, he states:

    Defendant Dermanelian co-conspired with defendants from LVMPD, thereby acting in bad faith and/or was negligent; by failing to properly perform an objective SANE examination and fabricated corroborative physical evidence of a sexual assault with either a deliberate and/or reckless disregard for the truth. This false and misleading physical evidence was used by the LVMPD to violate my constitutional rights related to false arrest, false imprisonment, several illegal searches of my person and hotel room, and to initiate a malicious prosecution. I was wrongfully charged with sexual assault by the LVMPD based on the manufactured physical evidence, however, the Clark County District Attorney ultimately dismissed the baseless charges.

(ECF No. 79 Ex. 5 at 1.) He further attests that "based on [his] professional experience," Defendant Dermanelian improperly administered the SANE examination leading to a number of "false and misleading" conclusions. (*Id.* at 3–6.) He also claims:

    [Defendant] Dermanelian failed to notify police of material facts such as: the alleged victim had a blood alcohol level of .173, a history of substantial mental illness as noted in her exam and examination forms, and she was mixing her psychoactive antidepressant medication (Wellbutrin) with alcohol during the time she experienced a psychotic episode and memory impairment, which are both known side effects of mixing alcohol with her psychoactive medication. [Defendant] Dermanelian also omitted the fact that a white substance could be seen on the walls of her vagina during the speculum examination indicating that [Ms.] Carter suffered from a yeast infection, also known as vulvovaginal candidiasis.

(*Id.* at 6–7.)

///

///

///

///

///

## LEGAL STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. On the one hand, if the party seeking summary judgment would bear the burden of proof at trial, then he can only satisfy his burden by presenting evidence that proves every element of his claim such that no reasonable juror could find otherwise assuming the evidence went uncontroverted. *Id.* at 252. On the other hand, when the party seeking summary judgment would not bear the burden of proof at trial, he satisfies his burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan J., concurring). A court should deny summary judgement if either the moving party fails to meet his initial burden or, if after the moving party meets that burden, the other party establishes a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## ANALYSIS

Defendant Dermanelian moves for summary judgment claiming that the evidence adduced through the criminal proceedings definitively shows that she was not a state actor and never conspired to violate Plaintiff's rights. She argues that rather the evidence proves that she performed the SANE exam as a private contractor, concluded that there was a "positive finding" for sexual activity (which Plaintiff admits to), and relayed those results to the police.[4]

---

[4] Plaintiff also points to the colloquy between the Ninth Circuit and Plaintiff's counsel, in which

### I. Section 1983 Conspiracy

Plaintiff first alleges that Defendant Dermanelian entered into a conspiracy with the police to violate Plaintiff's constitutional rights in violation of § 1983. In his complaint, Defendant points to his right to be free from unreasonable searches and seizures, right to be free from unlawful arrest, and his right to due process as guaranteed by the Fourth and Fourteenth Amendments. (ECF No. 31 Ex. 3 ¶ 53.) "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1144, 1149 (9th Cir. 2011). A private party may be liable pursuant § 1983 by conspiring with a government actor to violate a party's rights. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 935 (9th Cir. 2012). To show such a civil conspiracy, the plaintiff must show that the defendant reached an agreement to violate the plaintiff's constitutional rights and that conspiracy resulted in the actual denial of the plaintiff's constitutional rights. *Radcliffe v. Rainbow Constr. Co.*, 254 F.3d 772, 783 (9th Cir. 2001).

Defendant Dermanelian argues in this motion that Plaintiff cannot show sufficient evidence that would establish a genuine issue of fact over whether Defendant Dermanelian reached an agreement with the police to violate Plaintiff's rights.[5] According to the operative complaint, Defendant Dermanelian only found signs of sexual activity but could not determine whether the

---

all three judges on the panel indicated that Plaintiff's claims against Defendant Dermanelian were not plausible and even pressured Plaintiff to dismiss the claims against her. (Video Recording of Oral Argument at 29:59–32:12, *Marino Scafidi v. LVMPD*, No. 18-16229 (available at https://www.ca9.uscourts.gov/media/view_video.php?pk_vid=0000016876).) Even though the Ninth Circuit did make these comments, they do not factor into the Court's analysis for this motion.

[5] Defendant Dermanelian also argues that there is no evidence that she was acting under the color of law. This is argument is entwined with her argument over whether there is a conspiracy. Such a conspiracy satisfies the "joint action test" to hold a private party liable for § 1983 violation. *Brunette v. Humane Soc'y of Ventura Cty.*, 294 F.3d 1205, 1211 (9th Cir. 2002). For this reason, the Court treats these arguments as one.

activity was consensual. (ECF No. 31 Ex. 3 ¶ 36.) From this Plaintiff merely concludes, "[Defendant] Dermanelian set-in-motion a malicious prosecution of [Plaintiff]. [Defendant] Dermanelian also conspired with all other Defendants to violate [Plaintiff]'s civil rights." (*Id.*)

In his opposition to this motion, Plaintiff posits additional facts to support the conclusion that Defendant Dermanelian conspired with the police to infringe upon his rights. He first points to assertions that Defendant Dermanelian "conducted the SANE exam at the direction of [LVMPD] . . . [,] performed the examination to look for physical evidence of sexual assault on [Ms.] Carter . . . [, and] was not privately retained by [Ms.] Carter to conduct this examination." (ECF No. 79 at 22.) Even assuming the veracity all of these three assertions, they merely show that there was a contract for Defendant Dermanelian to perform a sexual assault examination of Ms. Carter and have no bearing on whether Defendant Dermanelian "share[d] the [alleged] common objective" of violating Plaintiff's rights. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (en banc). As such these assertions fail to evince a conspiracy.

Plaintiff next alleges that Defendant Dermanelian "submit[ed] a knowingly false diagnosis of sexual assault to the LVMPD Detectives." (ECF No. 79 at 22.) For this argument, Plaintiff points to the following facts: Defendant Dermanelian indicated sexual assault was the diagnosis on her examination report, (ECF No. 79 Ex. 4 at 5), the LVMPD arrest report stated that "the exam showed positive findings of a sexual assault which can be obtained through the SANE nurse," (*Id.* at 10), and the LVMPD search warrant affidavit also states that "[Ms.] Carter received a SANE exam which showed positive findings consistent with a sexual assault," (*Id.* at 11).

This assertion however is otherwise belied by the record. Defendant Dermanelian swears by affidavit that she only communicated to LVMPD detectives that she found positive signs of sexual activity without being able to determine whether the activity was consensual from the

examination. (ECF No. 72 Ex. A ¶ 10.) Defendant Pool and Defendant Beza confirmed Defendant Dermanelian's statement in their testimony before the state court. Defendant Pool swore that Defendant Dermanelian only communicated "positive findings [for] some sort of sexual contact." (ECF No. 85 Ex. A at 39.) Defendant Beza swore that when he applied for the search warrant, he had not spoken to Defendant Dermanelian but relied upon Defendant Pool's representations about the examination. (*Id.* at 115–17.) Both detectives testified that they had not seen the records generated by Defendant Dermanelian that indicated that her diagnosis was sexual assault. (*Id.* at 40, 115–16.) Further, as Plaintiff admits in his complaint and in his affidavits, the state district court also concluded that the sexual assault examination results presented to the police merely showed signs of sexual activity and not sexual assault. (ECF No. 31 Ex. 3 ¶ 36; ECF No. 79 Ex. 3 at 6; ECF No. 79 Ex. 5 at 3.)

If Defendant Dermanelian fabricated evidence of sexual assault to help the government wrongfully prosecute Plaintiff, then this could be a conspiracy to infringe upon Plaintiff's constitutional rights. However, the Court finds that no reasonable juror the Defendant Dermanelian communicated the diagnosis of sexual assault to the police. This basis for Plaintiff's claim therefore fails to show that Defendant Dermanelian engaged in a conspiracy—even if this Court were to grant that such a diagnosis was wrongful.

In addition to claiming that Defendant Dermanelian fabricated findings of sexual assault, Plaintiff also now claims based on his review of the documents produced from the SANE examination that it was incorrectly applied and should not have even elicited positive indications of sexual activity. (ECF No. 79 Ex. 3 at 6–7; ECF No. 79 Ex. 5 at 3–6.) Plaintiff is apparently attempting to claim that the Defendant Dermanelian also fabricated evidence of sexual activity. Despite this apparent argument, Plaintiff claims that Defendant Dermanelian did so out of "bad faith and/or was negligent." (ECF No. 79 at 8.) The Court initially notes that negligence would be

insufficient to show that Defendant Dermanelian conspired with the LVMPD to deprive him of his rights.

He bases this assertion on his own review of the examination records. However, the medical record signed by Defendant Dermanelian and Dr. Carrison, notes several indications of recent sexual activity: labia soreness, external genitalia soreness, pain in the posterior fourchette with light palpation with swabs, the toluidine blue dye had a positive uptake and caused a cold and burning sensation, and the patient has hymenal edging that is noted to be erythemic at the 1 o'clock position. While Plaintiff contests this conclusion based upon his professional experience as a chiropractor, he has not shown that he is a qualified expert according to Fed. R. Evid. 702; indeed, he has not indicated that he has any experience in interpreting sexual assault examinations. Plaintiff's self-serving assertion that the exam failed to produce any evidence of recent sexual activity is insufficient for a reasonable juror to make that conclusion. This is especially true in light of the fact that he admits to having sexual relations with Ms. Carter just hours before Defendant Dermanelian conducted the examination. (*See* ECF No. 31 Ex. 3 ¶ 20 (alleging that Plaintiff and Ms. Carter went to his hotel room at approximately 3:00 a.m. on September 2, 2012); ECF No. 79 Ex. 4 at 5 (noting that the sexual assault examination occurred at 9:00 a.m. on September 2, 2012).)

Lastly, Plaintiff appears to argue that Defendant Dermanelian engaged in a conspiracy because she failed to indicate to officers that Ms. Carter's blood alcohol level was 0.173; she had a history of mental illness; she was on Wellbutrin, which should not be combined with alcohol according to its label; and that she had a yeast infection.[6] The medical records generated by Defendant Dermanelian and Dr. Carrison note that Ms. Carter had a history of depression, anxiety

---

[6] In his second affidavit, Plaintiff asserts that Defendant Dermanelian omitted these facts. In the section of his brief where he argues that Defendant Dermanelian engaged in a conspiracy, he does not specifically mention this allegation, but he does state summary judgment is not warranted based, in part, upon Plaintiff's affidavits. (ECF No. 79 at 23.)

with tremors, and anorexia. (ECF No. 79 Ex. 4 at 7.) They also note that she was currently taking Wellbutrin and that her blood alcohol level was 0.173. (*Id.* at 7, 9.) Plaintiff's assertion that Ms. Carter was suffering from a yeast infection at the time appears to be only based upon his personal assessment of the pictures taken from the SANE examination, which as discussed above is not admissible expert testimony. (ECF No. 79 Ex. 5 at 7.) Plaintiff also fails to provide evidence that Defendant Dermanelian actually omitted the alcohol level, history of mental illness, and possible side effects of combining alcohol and Wellbutrin, when she reported the results of the examination to Defendant Pool. He merely relies upon his affidavit but fails to indicate how he has personal knowledge of these facts. Fed. R. Evid. 602. And even if she did, no reasonable juror could conclude that the omissions were sufficient to have affected the government's decision to prosecute Plaintiff. The police reports already note that they were aware that Plaintiff had been drinking and that she was "having a hard time remembering events." For these reasons, this assertion also fails to prove that Defendant Dermanelian engaged in a conspiracy.

The Court agrees with Defendant Dermanelian that, in sum, Plaintiff lacks sufficient evidence such that a reasonable juror could conclude that Defendant Dermanelian conspired with the LVMPD to deprive Plaintiff of his rights. As such the Court finds that summary judgment is appropriate in favor of Defendant Dermanelian on this claim.

## II.     *Malicious Prosecution*

Plaintiff next alleges that Defendant Dermanelian's actions amount to malicious prosecution under Nevada law. For such a claim to prevail a plaintiff must show: "(1) want of probable cause to initiate the prior criminal proceeding; (2) malice; (3) termination of the prior criminal proceedings; and (4) damage." *LaMantia v. Redisi*, 38 P.3d 877, 879 (Nev. 2002) (quoting *Jordan v. Bailey*, 944 P.2d 828, 834 (Nev. 1997)). The plaintiff must also show active participation in the prosecution. *Id.*

Here, Plaintiff merely asserts that Defendant actively participated "by submitting a false diagnosis of sexual assault." (ECF No. 79 at 24.) However, assuming arguendo that such a claim is sufficient to prove this element, as discussed above, there is insufficient evidence such that a reasonable juror could conclude that Defendant Dermanelian ever submitted a diagnosis of sexual assault to the detectives. As such summary judgment is also appropriate in favor of Defendant Dermanelian on this claim.

### III.   *Intentional Infliction of Emotion Distress*

Plaintiff lastly alleges intentional infliction of emotion distress against Defendant Dermanelian. For this claim, Plaintiff must prove "(1) extreme and outrageous conduct on the part of [Defendant Dermanelian]; (2) intent to cause emotional distress or reckless disregard for causing emotional distress; (3) that Plaintiff actually suffered extreme or severe emotional distress; and (4) causation." *Miller v. Jones*, 970 P.2d 571, 577 (Nev. 1998). Plaintiff similarly bases this claim entirely on his contention that Defendant "Dermanelian submit[ed] a false diagnosis of sexual assault to" the police and the resulting arrest, searches, and prosecution. (ECF No. 79 at 25.) Again, the Court finds that Plaintiff has not submitted evidence sufficient such that a reasonable juror could conclude that Defendant Dermanelian provided detectives a false diagnosis of sexual assault. As such, the Court concludes that summary judgment is appropriate in favor of Defendant Dermanelian on this remaining claim.

### IV.   *Fed. R. Civ. P. 54(d) Request*

While summary judgment may be appropriate in favor of Defendant Dermanelian based on the current record, Plaintiff moves to allow for additional discovery under Fed. R. Civ. P. 54(d). For such a motion to succeed, the moving party must show that "(1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Fin. Ctr., Inc.*

*v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). In an affidavit in support of this motion, Plaintiff's counsel states that it is essential that he depose Defendant Dermanelian and other "vital parties" and hire experts regarding Defendant Dermanelian's examination of Ms. Carter. (ECF No. 79 Ex. B.)

The Court is aware that while this case is more than six years old, no formal discovery has been taken due to a stay and an appeal. Plaintiff, however, has failed to identify any specific facts in his Rule 56(d) affidavit that would allow him to survive summary judgment were he allowed to commence with discovery. Rather, he merely states in broad terms that he seeks discovery regarding the sexual assault examination. The failure to state specific facts in a Rule 54(d) request is sufficient grounds for denial. *Echlin v. Dynamic Collectors, Inc.*, 102 F. Supp. 3d 1179, 1183 (W.D. Wash. 2015) (citing *Fam. Home*, 525 F.3d at 827.) The Court therefore declines to grant this request, and grants summary judgment in favor of Defendant Dermanelian and dismisses her from this case.

**CONCLUSION**

IT IS HEREBY ORDERED that Defendant Dermanelian's Motion for Summary Judgment (ECF No. 72) is GRANTED.

IT IS FURTHER ORDERED that Defendant Dermanelian is DISMISSED from this case.

IT IS SO ORDERED.

Dated: February 9, 2021.

_____
ROBERT C. JONES
United States District Judge