1
2
3
4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6

* * *

7

MARINO SCAFIDI,

Case No. 2:14-cv-01933-RFB-VCF

8

Plaintiff,

**ORDER**

9

v.

10

LAS VEGAS METROPOLITAN POLICE
DEPARTMENT, *et al.*,

11
12

Defendants.

13
14

### I.    INTRODUCTION

15

Before the Court is Defendants Las Vegas Metropolitan Police Department ("LVMPD"),

16

Sgt. S. Comiskey, Lt. D. McGrath, Det. K. Pool, Det. R Beza, Det. A. Christensen, and CSI K.

17

Grammas's Motion for Summary Judgment (ECF No. 107) and Motion to Seal (ECF No. 108).

18

The Court finds this matter properly resolved without a hearing. See Local Rule 78-1.

19

For the foregoing reasons, Defendants' motions are granted.

20
21

### II.    PROCEDURAL BACKGROUND

22

On August 29, 2014, Plaintiff filed a Complaint against, as relevant here, LVMPD, five

23

officers and detectives, and a crime scene investigator in state court. ECF No. 1. The Complaint

24

specifically alleges (1) a violation of 42 U.S.C. § 1983 against Defendants McGrath, Comiskey,

25

Pool, Beza, Christensen, and Grammas; (2) <u>Monell</u> Liability against Defendant LVMPD; (3) a

26

Section 1983 conspiracy claim against Defendants McGrath, Comiskey, Pool, Beza, Christensen,

27

and Grammas; (4) a negligence claim against Defendant LVMPD; (5) a false imprisonment claim

28

against Defendants McGrath, Comiskey, Pool, Beza, Christensen, and Grammas; (6) a malicious

prosecution claim against Defendants McGrath, Comiskey, Pool, Beza, Christensen, and Grammas; and (7) an intentional infliction of emotional distress claim against all Defendants. Id. On November 20, 2014, Defendants removed this action, and it was assigned to the Honorable Robert C. Jones. Id. On January 20, 2015, the district court granted the parties' stipulation to stay the proceedings, including discovery, as Plaintiff's underlying criminal matter was pending on appeal before the Nevada Supreme Court. ECF No. 30. On May 17, 2017, the district court continued the stay until December 31, 2017, even though it would still entertain any motions to dismiss. ECF No. 47.

On August 21, 2017, Defendants filed their first motion for summary judgment. ECF No. 48. On June 15, 2018, the district court granted Defendants summary judgment on the ground that Plaintiff was precluded from relitigating the state justice of the peace's determination that there was probable cause to believe that Plaintiff had committed a crime. ECF No. 58. The district court also concluded that Plaintiff's state tort claims against Defendant LVMPD were barred because Plaintiff failed to comply with Nevada's administrative presentment statute, and the individual officers were entitled to discretionary-act immunity for the those claims as well. Id. On July 3, 2018, Plaintiff appealed from the grant of summary judgment with the Court of Appeals for the Ninth Circuit. ECF No. 65.

On July 23, 2020, the Ninth Circuit affirmed the district court's grant of summary judgment as to Defendant LVMPD on Plaintiff's state tort claims but reversed and remanded on the remaining claims. Scafidi v. Las Vegas Metro. Police Dep't, 966 F.3d 960 (9th Cir. 2020). First, it concluded that the district court had erroneously decided that the probable cause determination made at the state justice of the peace hearing precluded Plaintiff from asserting in his federal suit that Defendants lacked probable cause to arrest and detain him. Id. at 963. Second, the Ninth Circuit concluded that Plaintiff's allegations that Defendants fabricated evidence or undertook other wrongful conduct in bad faith created a triable issue of material fact as to probable cause, pursuant to the Nevada Supreme Court's decision in Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety, 110 P.3d 30, 48-49 (Nev. 2005), overruled on other grounds by Buzz Stew, LLC v. City of N. Las Vegas, 181 P.3d 670 (Nev. 2008), and its decision in Awabdy v. City of Adelanto,

368 F.3d 1062 (9th Cir. 2004). Id. at 963-64. Accordingly, the panel reversed the district court's order as to Plaintiff's Section 1983 claims. Lastly, as it relates to Plaintiff's state tort claims, the Ninth Circuit affirmed the district court's ruling that Plaintiff's claims against Defendant LVMPD were barred under Nevada Revised Statute § 41.036(2). Id. at 965. The panel, however, held that, given the factual disputes, discretionary act immunity under Nevada state law did not bar Plaintiff's state law claims against the individual Defendant officers. Id.[1]

On October 13, 2020, after the case was remanded, the district court granted the parties' scheduling order, including discovery plan. ECF No. 81. Discovery closed on April 13, 2022. See ECF No. 106. On May 9, 2022, Defendants filed the instant motion for summary judgment. ECF No. 107. Plaintiff responded on June 27, 2022, ECF Nos. 115, 117, and Defendants replied on July 21, 2022. ECF No. 120.

On June 23, 2022, this case was reassigned from the Honorable Robert C. Jones to the undersigned. ECF No. 113. On September 21, 2022, the Court vacated the jury trial set for October 25, 2022. ECF No. 121.

This Order follows.

### III. FACTUAL BACKGROUND

#### a. Undisputed Facts

The Court finds the following facts to be undisputed based on the record.

On September 1, 2012, after months of communication through Match.com, an online dating platform, Plaintiff and S.C. decide to meet in person at the Palms Hotel and Casino in Las Vegas where Plaintiff has rented a room. That night, they eat dinner, dance, and drink at the Palms. After initially going to Plaintiff's hotel room to talk, they then spend time at Rain, a nightclub at the Palms. Thereafter, they return to Plaintiff's hotel room where they engage in sexual activity in the early morning hours of September 2.

At around 4:19 a.m., S.C. calls 911 from the hotel room's bathroom telephone, reporting

---

[1] The Ninth Circuit separately declined to consider Plaintiff's argument that Nevada Revised Statute § 41.036(2) was invalid and unenforceable under the Nevada Supreme Court's decision in Turner v. Staggs, 510 P.2d 879 (Nev. 1973), because it was raised for the first time on appeal. Scafidi, 966 F.3d at 964.

that Plaintiff is trying to harm her. She indicates that she is locked in the bathroom. She claims that Plaintiff has a gun, and that he is going to kill her. The 911 operator spends the duration of the call attempting to locate S.C., as S.C. does not know what hotel room she is in. At around 4:22 a.m., the operator calls the hotel's security explaining that "we have somebody calling from one of your rooms, she's locked in the bathroom and she's crying, she called on 911 if I give you the phone number can you tell me what room number it is?" ECF No. 107-6 at 9. The 911 operator then indicates to security that the situation "looks like it's an assault too." Id. at 11. Plaintiff is heard throughout the 911 call asking if S.C. is alright, telling her he needs to use the bathroom, and demanding that S.C. open the door. Twice, he threatens to "kick [her] ass" for not opening the door.[2] ECF No. 107-6 at 26. At no point during the twenty-seven-minute call, however, does S.C. say she was sexually assaulted.

When Palms's security and LVMPD officers arrive at Plaintiff's hotel room, around 5 a.m., they find S.C. locked in the bathroom and bleeding. The officers and hotel security then take Plaintiff to a hotel security room, while detectives investigate S.C.'s allegations against Plaintiff. At this time, Plaintiff invokes his Fifth Amendment rights.

In the meantime, S.C. is transferred to the University Medical Center ("UMC"). There, Defendant Pool, a sexual assault detective assigned to investigate what happened that morning, and Defendant Comiskey, his supervisor, conduct an initial interview with S.C. Meanwhile, Defendant Beza, also a sexual assault detective, is called by Defendant Pool to initiate an investigation at the hotel room. When Defendant Beza arrives at the Palms, he goes to the security area where Plaintiff is being detained. There, he waits for Defendant Pool to determine, based on Defendant Pool's interviews with S.C., whether there is probable cause for a search warrant.

Defendant Pool's interview with S.C. takes place around 6:27 a.m. Although S.C. tells Defendant Pool that her cell phone contained text messages sent between her and friends during her evening and morning with Plaintiff, she initially appears unable and reluctant to recount all of the specific details of here interaction with the Plaintiff. While she is not able to remember many details, when asked if she believes she was sexually assaulted she responds "100% I was."

---

[2] Plaintiff is unaware that Carter is on the phone with a 911 operator during this time.

Nevertheless, Defendant Pool tells S.C. that the conduct S.C. can recall Plaintiff engaging in is not illegal. S.C. indicates multiple times that she does not want to continue the interview. In response, Defendant Pool states that he will be unable to prosecute the case against Plaintiff, including obtaining a search warrant for the hotel room, if she does not give him more information. Defendants then end the interview, and S.C. undergoes a sexual assault medical evaluation ("SANE").

 Defendant Pool then interviews S.C. a second time around 8:42 a.m., and S.C. states that she affirmatively told Plaintiff that she did not want to engage in sexual activity with him. In doing so, she provides more details about their morning encounter in his hotel room, including that at some point she was "laughing and joking," that she told him "no" to having sex, that he put his fingers and penis in her vagina, that it was not consensual, that she pretended to be asleep, and that she pretended to be sick to go to the bathroom. It was then, after the second interview, that Defendant Pool contacts Defendant Beza to obtain a search warrant for Plaintiff's hotel room.

Defendant Pool then calls Defendant Beza and tells him that it was a "sexual assault" case, that S.C. underwent a SANE examination, and that its "findings" are "positive." Defendant Beza uses this and other information to set forth probable cause to obtain a search warrant for Plaintiff's hotel room. Although Defendant Beza finds S.C.'s phone and a cell phone video camera in the room during his initial search, he only obtains a second search warrant for the video camera. While Defendants secure S.C.'s cell phone, they do not review the text messaging history but instead return the phone to S.C. sometime after the second interview concludes.

After completing the interviews with S.C., Defendant Pool returns to the hotel. Once there, he arrests Plaintiff around 10 a.m. for the crime of sexually assaulting S.C. and transfers him to the Clark County Detention Center ("CCDC"). Defendant McGrath approves the Arrest Report that Defendant Pool has prepared regarding Plaintiff's arrest for sexual assault. While he is booked, Plaintiff mentions to Defendant Pool that someone possibly drugged him. Plaintiff is held at CCDC for three to four days before he is released on bail.

A criminal case is filed against Plaintiff on September 4, 2012. See ECF No. 107-3. Plaintiff's preliminary hearing is on January 17, 2013, and the state justice of the peace determines,

based on testimony from S.C. and Defendant Pool, that there is sufficient evidence to believe Plaintiff committed the crime of sexual assault against S.C. ECF No. 107-3 at 24. On January 28, 2013, Plaintiff is criminally charged with sexually assaulting S.C. under Nevada Revised Statutes §§ 200.364, 200.366. ECF No. 1; State of Nevada v. Victor Marino, Docket No. C-13-286991-1 (Nev. Dist. Ct. Jan 25, 2013). Plaintiff subsequently files separate motions to dismiss the charges based on the government's failure to preserve S.C.'s blood and urine samples, Plaintiff's blood samples, and S.C.'s text message exchanges with friends from that night. ECF No. 115-6. On June 13, 2014, the state district court grants Plaintiff's motions, dismissing the charges due to spoliation of evidence. Id. On January 15, 2015, the Nevada Supreme Court reverses and remands the state district court, ruling that only the text messages were foreseeably exculpatory. State v. Scafidi, 131 Nev. 1351, at *3 (Nev. 2015). Accordingly, on remand, the state district court is to consider whether to dismiss the charges or give a curative jury instruction. Id. The state district court finds that a curative jury instruction is sufficient, and it schedules the trial for October 30, 2017. ECF No. 48. On October 12, 2017, however, the state district court grants the State's motion to dismiss all charges. ECF No. 115-9.

### b.  Disputed Facts

The parties dispute the following facts. First, the parties dispute whether the SANE examination provided evidence to support any sexual assault allegations and whether the text messages in S.C.'s phone provided exculpatory evidence important to Defendants' investigation. Second, the parties dispute whether Defendants McGrath, Comiskey, Christensen, and Grammas played any role in Plaintiff's arrest. Lastly, the parties dispute: whether Plaintiff was repeatedly denied the right to counsel despite his requests for legal assistance while he was held in the hotel security room; whether, during that time, LVMPD officers and detectives also threatened Plaintiff with being jailed, if he did not cooperate with the investigation; whether Defendants staged an incriminating crime-scene photograph to support the case against Plaintiff; and whether Defendants made racially derogatory remarks about Plaintiff after he was arrested.

### IV.  LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322(1986). When considering the propriety of summary judgment, courts view all facts and draws all inferences in the light most favorable to the nonmoving party. Gonzalez v. City of Anaheim, 747 F.3d 789, 793 (9th Cir. 2014). If the movant has carried its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (alteration in original) (internal quotation marks omitted). It is improper for the Court to resolve genuine factual disputes or make credibility determinations at the summary judgment stage. Zetwick v. County of Yolo, 850 F.3d 436, 441 (9th Cir. 2017) (citations omitted).

## V.    DISCUSSION

### a.  Federal Claims

"To state a claim under Section 1983, [a plaintiff] must plead two essential elements: 1) that the Defendants acted under color of state law; and 2) that the Defendants caused them to be deprived of a right secured by the Constitution or laws of the United States." Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). Defendants, however, are entitled to qualified immunity from Section 1983 claims, if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Gausvik v. Perez, 345 F.3d 813, 816 (9th Cir. 2003) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). On a motion for summary judgment, the Court determines "whether a constitutional violation occurred and, if so, whether a reasonable officer would have acted in the same manner." Id.

### i.  First Cause of Action

Plaintiff's first cause of action alleges that he was "arrested [] without probable cause," and that he was confined "within the Clark County Detention Center." ECF No. 1 at 15. This is because Defendants "conspired and deliberately [chose] to not preserve exculpatory evidence," and as

such, he "was falsely charged with felony crimes." Id. at 17. He alleges the actions were in violation of his Fourth and Fourteenth Amendment rights. The Court construes that Plaintiff's alleged constitutional violations in his First Cause of Action as resting on two different claims under the Fourth and Fourteenth Amendments: a.) a deliberate fabrication of evidence claim under the Fourteenth Amendment, and b.)  a false arrest claim under the Fourth Amendment. The Court separately analyzes each claim.

### 1.   Deliberate Fabrication of Evidence Claim

Plaintiff claims that Defendants deliberately used coercive and abusive techniques during the sexual assault investigation against Plaintiff by (1) falsely characterizing the results of the SANE examination and the 911 call's contents in the search warrant application for Plaintiff's hotel room and by (2) failing to preserve and review the exculpatory evidence of text messaging history from S.C.'s cell phone.

"'[T]here is a clearly established constitutional due process right not to be subject to criminal charges on the basis of false evidence that was deliberately fabricated by the government.'" Caldwell v. City & County of San Francisco, 889 F.3d 1105, 1112 (9th Cir. 2018) (quoting Devereaux v. Abbey, 263 F.3d 1070, 1074-75 (9th Cir. 2001)). A plaintiff prevails on a deliberate fabrication of evidence claim if he establishes that "(1) the defendant official deliberately fabricated evidence and (2) the deliberate fabrication caused the plaintiff's deprivation of liberty." Spencer v. Peters, 857 F.3d 789, 798 (9th Cir. 2017).

### a.   Fabrication

Deliberate fabrication can be shown by either "direct evidence of fabrication" or "circumstantial evidence related to a defendant's motive." Caldwell, 889 F.3d at 1112. Circumstantial evidence includes showing that "(1) Defendants continued their investigation of [the plaintiff] despite the fact that they knew or should have known that he was innocent; or (2) Defendants used investigative techniques that were so coercive and abusive that they knew or should have known that those techniques would yield false information." Spencer, 857 F.3d at 793, 799. A plaintiff, however, does not have to prove that Defendants knew or should have known the plaintiff was innocent if the plaintiff provides direct evidence of fabrication. See id. at 799.

Direct evidence of fabrication may be shown by the inclusion of statements that were "never made" in an officer's report, or "when an interviewer deliberately mischaracterizes witness statements in her investigative report." Id. at 793.

### i. Fabrication of SANE Examination Results and 911 Call Contents

The Court finds that there are genuine issues of disputed fact as to deliberate fabrication of evidence by Defendant Pool.

Plaintiff asserts that Defendant Pool deliberately fabricated the results of S.C.'s SANE examination by mischaracterizing them in the search warrant affidavit used to support a search of Plaintiff's hotel room. According to Plaintiff, the exam revealed no physical evidence to support any sexual assault allegation. Therefore, Defendant Beza's inclusion of the statement in the affidavit that the findings of the SANE exam performed were "positive" was a misleading statement. In opposition, Defendants contend that Defendant Pool's representation of "sexual assault" was a truthful statement based upon the information received from a medical professional. This is because the SANE Nurse, Jeri Dermanelian, told Defendant Pool that "there was positive findings for sex/sexual assault." Moreover, during his investigation, Defendant Pool relied on UMC medical records confirming a "sexual assault" finding.

The Court finds that there are genuine issues of disputed fact as to whether Defendant Pool deliberately fabricated evidence. First, Plaintiff has presented evidence that Pool was never told by the SANE nurse that the SANE examination found or confirmed that a sexual assault occurred. Second, Plaintiff has presented expert evidence which finds that the results were not consistent with sexual assault or even showed that sexual contact even occurred. Thus, based upon Plaintiff's asserted facts, Defendant Pool misrepresented to Defendant Beza that he had been told by a medical professional that a sexual assault had occurred, and he also misrepresented the facts when he said that the examination had found that a "sexual assault" had occurred.

These fabrications were augmented by further fabrications made by Defendant Beza himself in his affidavit. First, he affirmatively and falsely indicated that Carter had said in the 911 call that she had been "sexually assaulted" when no such allegation was made by Carter during the

call. The affidavit repeated the false conclusion that the SANE examination had provided "positive findings." Additionally, the affidavit deliberately omitted the fact that, when S.C. was questioned by Defendant Pool, she initially indicated in her <u>first interview</u>—two hours before the second interview—that she could not fully remember what had happened, and that she only offered statements providing specific details about the alleged sexual assault in a <u>second interview</u> after Pool told her that her first interview did not establish probable cause to arrest Plaintiff.

Accordingly, there is a triable issue as to whether Defendants deliberately fabricated the results of S.C.'s SANE examination and the contents of the 911 call in connection with the arrest of Plaintiff.

### ii. Failure to Preserve Text Messages from S.C.'s Cell Phone

Next, however, the Court finds that Plaintiff's claim that Defendants' failure to collect and preserve S.C.'s text messages violates the "due process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government" fails as a matter of law. <u>Devereaux</u>, 263 F.3d at 1075-76. Plaintiff contends that Defendants seized S.C.'s cell phone but made no effort to record or capture S.C.'s text message history from that evening and morning with Plaintiff.

Even if the erased text messages would have presented exculpatory evidence as to Plaintiff's alleged guilt on the charge of sexual assault, the Court finds that federal law has not yet recognized a civil claim under <u>Devereaux</u> for such a failure to preserve exculpatory evidence by itself. As the Ninth Circuit has recently confirmed, withholding exculpatory evidence "cannot in itself support a deliberate-fabrication-of-evidence claim." <u>O'Doan v. Sanford</u>, 991 F.3d 1027, 1045 (9th Cir. 2021) (quoting <u>Devereaux</u>, 263 F.3d at 1079). Deliberate fabrication, the Ninth Circuit has concluded, "must mean something more than a mere omission." <u>Id.</u>

Therefore, Plaintiff's Fourteenth Amendment failure to preserve exculpatory evidence claim under the <u>Devereaux</u> framework fails as a matter of law.

### b. Causation

The Court now addresses whether Defendants' deliberate fabrication of evidence caused

1    Plaintiff's deprivation of liberty. Indeed, Plaintiff contends that Defendants' deliberate fabrication

2    caused him to be arrested without probable cause and falsely charged with felony crimes. The

3    Court disagrees.

4           "To establish causation, [a plaintiff] must raise a triable issue that the fabricated evidence

5    was the cause in fact and proximate cause of his injury." Caldwell, 889 F.3d at 1115. "[A] § 1983

6    plaintiff need not be convicted on the basis of the fabricated evidence to have suffered a deprivation

7    of liberty—being criminally charged is enough." Id. Proximate cause exists where "the injury is

8    of a type that a reasonable person would see as a likely result of the conduct in question." Spencer,

9    857 F.3d at 798.

10          The Court finds that, even assuming the facts in Plaintiff's favor, the deliberate fabrication

11   did not cause Plaintiff to suffer a constitutional deprivation. This is because, even without

12   considering the deliberately fabricated evidence in the initial search warrant affidavit as discussed

13   above, Defendants still had a proper basis for detaining Plaintiff in the hotel security room and

14   then arresting and transferring him to CCDC. It is undisputed that S.C. called 911 reporting that

15   Plaintiff had a gun and was attempting to harm her. Using a phone in the bathroom, S.C. told the

16   911 operator to "please help me," "he's gonna hurt me," "he's gonna kill me," and "I wanna kill

17   myself before he kills me." ECF No. 107-6 at 20-35. Throughout the 27 minute 911 call, S.C. is

18   locked in the bathroom, and Plaintiff can be heard knocking on the door, demanding to be let in

19   and, at one point, threatening to "kick [her] ass." ECF No. 107-6 at 26. In the process of detaining

20   Plaintiff, the officers also find S.C. locked in the bathroom and bleeding. Even if at this point the

21   officers lacked probable cause, the officers had at least "reasonable suspicion supported by

22   articulable facts that criminal activity 'may be afoot.'" United States v. Sokolow, 490 U.S. 1, 7

23   (1989). Under the totality of the circumstances, the Court finds that the officers used the "least

24   intrusive means reasonably available to verify or dispel the officer's suspicion . . . ." Florida v.

25   Royer, 460 U.S. 491, 500 (1983). The Court concludes that the officers acted reasonably in initially

26   detaining Plaintiff.

27          Next, the Court finds that, absent the deliberately fabricated evidence discussed above, the

28   length and scope of Plaintiff's detention in the hotel security room were still justified by Defendant

Pool's two interviews with S.C. Of course, no per se duration exists as to when a <u>Terry</u> stop becomes an arrest. Rather, the "length and scope of detention must be justified by the circumstances authorizing its initiation." <u>Pierce v. Multnomah County</u>, 76 F.3d 1032, 1038 (9th Cir. 1996). "In assessing whether a detention is too long in duration to be justified as an investigative stop," courts "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant." <u>United States v. Sharpe</u>, 470 U.S. 675, 686 (1985).

The Court finds that Defendants diligently pursued a means of investigation intended to confirm or dispel their suspicions as quickly as possible. Defendants do not dispute, as Plaintiff contends, that Plaintiff was detained in the hotel security room for approximately four to five hours before Plaintiff was formally arrested. Approximately only one hour and a half pass between the time S.C. is found in the hotel bathroom and her first interview with Defendant Pool at UMC. What is plainly evident from the first interview is that she believes she communicated to Plaintiff that she did not want to engage in sexual activity with him, and that she experienced something traumatic. For instance, when Defendant Pool asks her about what happened in Plaintiff's hotel room, she states: "we were just like joking around and I was just like not interested in hooking up with him or anything. And I told him that."; "He came out just like - he started making out with me and I was like, 'No.' And I - I don't know. I don't really remember."; "I just remember thinking if I pretended to pass out and like I was just going to go to sleep, it would stop."; "But I - I remember telling him, 'No,' so many times and laughing at him like, 'Are you kidding me? This isn't going to-happen.' And then it getting to the point where like it was going to happen whether I wanted it or not." Defendant Pool then asks "do you believe you were sexual assaulted or do you not know?" Her answer was "100% I was and 100% he would've killed me if he would've got into that bathroom." Throughout the interview, she has trouble recalling details about what happened that morning. This is understandable given the nature of the event, as evident by the 911 call and the state she was found by the police officers and hotel security. She is also sharing these traumatic details with Defendant Pool, a stranger she just met.

The Court rejects Plaintiff's assertion that Defendant Pool engaged in coercive behavior

during this interview. Indeed, even after S.C. shared the above details, Defendant Pool states that he would be unable to charge Plaintiff without her sharing more details from that morning. Of course, S.C. has already strongly suggested that she experienced something traumatic that she did not agree to. Defendant Pool, having heard of the details she can remember, asks her if she believes she was sexually assaulted, and she responds "100%." While acknowledging that she does not want to continue the interview at that time, he asks S.C. if she wants to take a SANE examination and answers her questions about continuing the investigatory efforts at a later time. Ultimately, S.C. asks Defendant Pool if she can take a break from being interviewed, which he agrees to. In sum, throughout the course of the first interview, Defendant Pool diligently seeks to determine whether S.C. has been sexually assaulted. It is reasonable that, during this time, Plaintiff remains detained.

After the SANE exam, Defendant Pool then interviews S.C. a second time, around 8:42 a.m. During this interview, S.C. states that she told Plaintiff that she did not want to engage in sexual activity with him. In doing so, she now provides more details, including that she told him "no" to having sex, that he put his fingers and penis in her vagina, that it was not consensual, that she pretended to be asleep, and that she pretended to be sick to go to the bathroom. At bottom, the Court finds that, given the traumatic nature of such an inquiry, it was reasonable for Defendant Pool to give S.C. time to recollect the details of that morning over the span of two interviews. Defendant Pool then contacts Defendant Beza to provide him not just the details of the SANE exam and 911 call but also details from what S.C. had shared during the two interviews.

By 9:12 a.m., Defendant Beza applies for an initial search warrant of Plaintiff's hotel room, based on information provided by Defendant Pool. Omitting the SANE exam and the statement regarding the 911 call, the search warrant affidavit included the following as a basis for probable cause: S.C. "told [Plaintiff] to stop and that they were not going to have sex"; Carter told Defendant Pool that she "told [Plaintiff] to stop several times and then she allowed him to take her clothes off," and "that if he was going to do this to her, he must at least wear a condom"; and that Plaintiff "penetrated [Carter's] vagina with his penis, fingers and tongue." The Court finds that, given the proximity of these statements to the 911 call, her condition when she was found in the bathroom,

and that she was the alleged crime victim in the investigation, Defendants had a reasonable basis to continue detaining Plaintiff in the hotel security room while they searched his hotel room for evidence corroborating S.C.'s allegations against him.

It is undisputed that, at around 10 a.m., after he completed his interviews with S.C., Defendant Pool returned to the Palms, arrested Plaintiff, and then transferred him to CCDC for sexually assaulting S.C. The Court finds that, even without the deliberately fabricated evidence discussed above, S.C.'s statements and evidence collected from the search of his hotel room, under the totality of the circumstances, provided Defendants with a reasonable basis to conclude that probable cause existed to arrest and charge Plaintiff with the crime of sexual assault. See Fuller v. M.G. Jewelry, 950 F.2d 1437, 1444 (9th Cir. 1991) ("[C]rime victims are presumed reliable" if they can "furnish underlying facts sufficiently detailed to cause a reasonable person to believe a crime had been committed and the named suspect was the perpetrator."); see also United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007) ("Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested."). The Court concludes that Plaintiff has failed to establish that the deliberately fabricated evidence caused Plaintiff's deprivation of liberty.

Therefore, the Court finds that Plaintiff's deliberate fabrication of evidence claim fails.

### 2. False Arrest Claim

Plaintiff contends that Defendants lacked probable cause to arrest him and therefore subjected him to a false arrest. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Velazquez v. City of Long Beach, 793 F.3d 1010, 1018 (9th Cir. 2015). Under Nevada law, a "person is guilty of sexual assault if he or she: Subjects another person to sexual penetration, or forces another person to make a sexual penetration on himself or herself or another, or on a beast, against the will of the victim or under conditions in which the perpetrator knows or should know that the victim is mentally or physically incapable of resisting or understanding the nature of his or her conduct." Nevada Revised Statute 200.366(a).

1     For the reasons stated in the Court's causation analysis of Plaintiff's deliberate fabrication

2     of evidence claim, the Court finds that Plaintiff's false arrest claim fails as a matter of law. See

3     Ewing v. City of Stockton, 588 F.3d 1218, 1230 n.19 (9th Cir. 2009) (emphasis in the original)

4     ("[P]robable cause to believe that a person has committed any crime will preclude a false arrest

5     claim . . . .").

6     Accordingly, the Court grants summary judgment in Defendants' favor against Plaintiff's

7     First Cause of Action in its entirety.

8                          **ii.   Second Cause of Action**

9     Plaintiff asserts that his Monell claim is based on the following pattern or series of disputed

10    facts. First, patrol officers were not properly trained that an individual may not be subject to de

11    facto arrest by being placed in a secured room for hours without first establishing probable cause.

12    Second, officers may not mischaracterize or omit evidence in an attempt to create probable cause.

13    Third, officers may not threaten individuals who invoke their Fifth Amendment right to remain

14    silent. Here, Plaintiff alleges that more than one of the Defendants continued to try to question

15    Plaintiff and threatened to throw him in jail if he did not talk to them after he asserted his right to

16    remain silent and to have an attorney present during questioning. This coercive conduct, as to the

17    assertion of his rights, also allegedly included: a.) not being allowed to put on clothes, b.) denying

18    him the ability to call an attorney, c.) denying him access to food or water for the four to five hours

19    that he was detained in the hotel security room.

20    Defendants argue that this claim must be dismissed because there is no underlying

21    constitutional violation. Defendants also argue that Plaintiff has made no attempt to prove his

22    Monell claim because he fails to identify a written policy, provide evidence of an unwritten

23    custom, or identify a single other instance that supports his claim.

24    Under Monell, when a municipal policy of some nature is the "driving force" behind an

25    unconstitutional action taken by municipal employees, the municipality will be liable. Monell v.

26    Dep't of Social Services, 436 U.S. 658 (1978). A litigant can establish a Monell claim: "(1) by

27    showing a longstanding practice or custom which constitutes the standard procedure of the local

28    governmental entity; (2) by showing that the decision-making official was, as a matter of state law,

- 15 -

a final policy-making authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate." Menotti v. City of Seattle, 409 F.3d 1113, 1147 (9th Cir. 2005). Alternatively, a municipality's failure to train an employee who has caused a constitutional violation can be the basis for § 1983 liability if the failure to train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. City of Canton Ohio v. Harris, 489 U.S. 378, 388 (1989). Ultimately, Monell claims are "contingent on a violation of constitutional rights." Lockett v. County of Los Angeles, 977 F.3d 737, 741 (9th Cir. 2020).

The Court finds that Plaintiff's Monell claim fails as a matter of law because he has not established a policy or practice outside of his own interaction with LVMPD. Further, as to the failure to train theory, "[w]hile deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious, an inadequate training policy itself cannot be inferred from a single incident." Hyde v. City of Willcox, 23 F.4th 863, 874–75 (9th Cir. 2022) (citation omitted). Plaintiff fails to present evidence outside of the evidence from his own single incident that would support any claim that Defendant LVMPD failed to train its officers. The Court notes that Plaintiff alleges that other alleged constitutional violations, separate from the First Cause of Action, also form the basis for his Monell claim. He, however, fails to provide evidence to support a finding that those alleged violations should be imputed to Defendant LVMPD based upon a policy or practice.

Thus, the Court grants summary judgment in Defendant LVMPD's favor against Plaintiff's Second Cause of Action.

### iii.  Third Cause of Action

Plaintiff asserts that Defendants conspired to conduct a biased and fundamentally unfair investigation against him in violation of his constitutional rights. Plaintiff alleges several acts of bad faith committed by the officers and their supervisors. Plaintiff also claims that approximately six different police officers were involved in this conspiracy. In response, Defendants argue that, because Plaintiff has failed to establish an independent constitutional violation, his conspiracy

claim fails as a matter of law. Additionally, Defendants argue that there is no civil conspiracy because Plaintiff has not pointed to evidence that Defendants had an express or implied agreement amongst themselves to deprive Plaintiff of any constitutional right.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must demonstrate the existence of an agreement or meeting of the minds to violate constitutional rights." Crowe v. County of San Diego, 608 F.3d 406, 440 (9th Cir. 2010); id. at 440-41 ("A 'common objective' to merely prosecute [plaintiff] is insufficient; fair prosecution would not violate [his] constitutional rights."). Such an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement"—a plaintiff need only point to some "facts probative of a conspiracy." Ward v. EEOC, 719 F.2d 311, 314 (9th Cir. 1983). An agreement "may be inferred on the basis of circumstantial evidence such as the actions of the defendants," meaning, "[f]or example, a showing that the alleged conspirators have committed acts that 'are unlikely to have been undertaken without an agreement' . . . ." Mendocino Env't Ctr. v. Mendocino County, 192 F.3d 1283, 1301 (9th Cir. 1999).

The Court, incorporating by reference both its deliberate fabrication of evidence causation analysis and its false arrest analysis, finds that Plaintiff's conspiracy claim fails as a matter of law because Plaintiff has failed to establish Defendants violated any of Plaintiff's constitutional rights. The Court also finds Plaintiff's conclusory reliance on prior state court decisions and alleged acts of "bad faith" by "officers and their supervisors" alleged in his affidavit, although not alleged in his actual Complaint as a cause of action, for instance, fails to support his federal conspiracy claim. See Indep. Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir. 2003) (stating that courts cannot "manufacture arguments" for litigants). Plaintiff must clearly set forth his claims so that the Court and Defendants can clearly understand the nature of his case. He cannot simply assert in conclusory fashion alleged violations without identifying them as separate claims. See id.

The Court accordingly grants summary judgment in Defendants' favor as to Plaintiff's Third Cause of Action.

### b. State Claims

Now, the Court addresses Plaintiff's state law claims against Defendants. Plaintiff's

Complaint contains state law claims for negligence, false imprisonment, malicious prosecution, and intentional infliction of emotional distress. Defendants contend that these claims fail as a matter of law. First, they argue that the claims are barred by Nevada Revised Statutes § 41.036(2) because Plaintiff failed to provide timely notice of the claims, and the Ninth Circuit erred in concluding that this statute only applied to Defendant LVMPD and not the individual Defendants. Second, all Plaintiff's state law claims require a lack of probable cause finding, and here probable cause to search Plaintiff's hotel room and to arrest him for sexual assault existed. Third, the individual Defendants are also entitled to discretionary-act immunity pursuant to Nevada Revised Statute § 41.032. This is because, among other things, there was no bad faith as Defendant Pool's representation in reports and to Defendant Beza that the SANE exam had positive findings for "sexual assault" was supported by UMC medical records, and that at worst, it was a mistaken representation.

Under Nevada Revised Statutes § 41.036(2), "[e]ach person who has a claim against <u>any political subdivision</u> of the State arising out of a tort must file the claim within 2 years after the time the cause of action accrues with the governing body of that political subdivision." (emphasis added). The Ninth Circuit affirmed Judge Jones's grant of summary judgment in favor of Defendant LVMPD finding that Plaintiff's state-law claims against it "were barred under § 41.036(2)." <u>Scafidi</u>, 966 F.3d at 964. The panel concluded that "[t]he claim statute bars claims against political subdivision[s] of the State only. . . ." <u>Id.</u> The Court agrees with the Ninth Circuit. Accordingly, it does not reconsider Plaintiff's negligence and intentional infliction of emotional distress causes of action against Defendant LVMPD.[3] Second, the Court agrees with the Ninth Circuit that the statute "does not bar [Plaintiff]'s claims against the individual defendants . . . ." <u>Id.</u>

_____

[3] The Ninth Circuit declined to consider Plaintiff's argument relying on <u>Turner v. Staggs</u>, 510 P.2d 879 (Nev. 1973) to argue that Nevada Revised Statute § 41.036 is unconstitutional, because it was raised for the first time on appeal. <u>Scafidi</u>, 966 F.3d at 964. The Court declines to consider this argument as well. <u>See</u> <u>United States v. Luong</u>, 627 F.3d 1306, 1309 (9th Cir. 2010) ("When a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.").

1   at 965. Thus, the Court finds that Nevada Revised Statute § 41.036(2) is not a bar to Plaintiff's

2   state claims against the individual Defendants.

3          In any event, "an arrest made with probable cause is privileged and not actionable." <u>Nelson</u>

4   <u>v. City of Las Vegas</u>, 665 P.2d 1141, 1144 (Nev. 1983). Nevada's appellate courts have addressed

5   the type of state tort claims alleged in Plaintiff's Complaint, and they have determined that the

6   claims fail where the challenged conduct is supported by probable cause. <u>See, e.g.</u>, <u>Hernandez v.</u>

7   <u>City of Reno</u>, 634 P.2d 668, 671 (Nev. 1981) (false imprisonment claim dismissed because the

8   plaintiff's arrest was based on probable cause); <u>Bonamy v. Zenoff</u>, 362 P.2d 445, 446-47 (Nev.

9   1961) (concluding lack of probable cause is an element of a malicious prosecution claim); <u>Palmieri</u>

10  <u>v. Clark County</u>, 367 P.3d 442, 446 n.2 (Nev. Ct. App. 2015) (intentional infliction of emotional

11  distress claim dismissed because residential search the claim was based on was supported by

12  probable cause). For the reasons discussed in the Court's deliberate fabrication of evidence

13  causation analysis and its false arrest analysis above, the Court concludes that Plaintiff's remaining

14  state claims fail as a matter of law. The Court does not address the parties' other arguments.

15         Accordingly, the Court grants summary judgment in Defendants' favor as to Plaintiff's

16  Fourth, Fifth, Sixth, and Seventh Causes of Action.

17      **VI.    CONCLUSION**

18      **IT IS THEREFORE ORDERED** that Defendants Las Vegas Metropolitan Police

19  Department, Sgt. S. Comiskey, Lt. D. McGrath, Det. K. Pool, Det. R Beza, Det. A. Christensen,

20  and CSI K. Grammas's Motion for Summary Judgment (ECF No. 107) is GRANTED. The Clerk

21  of the Court shall enter judgment accordingly.

22         Good cause being found, **IT IS FURTHER ORDERED** that Defendant Las Vegas

23  Metropolitan Police Department's Motion to Seal (ECF No. 108) is GRANTED.

24         The Clerk of the Court is instructed to close this case.

25      **DATED:** <u>March 31, 2023</u>

26  _____

27      **RICHARD F. BOULWARE, II**

28      **UNITED STATES DISTRICT JUDGE**